UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORMA OGDEN

        Plaintiff,                       CASE NO. 06-14555
                                                HON. LAWRENCE P. ZATKOFF

v.

TARGET STORES, INC., and
BILLIE JO WALKER,

        Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on December 13, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendants' Motion for Summary Judgment (Dkt. #18). Plaintiff has responded to Defendants' motion and the issues are otherwise fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendants' motion is GRANTED.

## II. BACKGROUND

This case arises out of Plaintiff's slip and fall accident at Defendant Target Stores, Inc.'s, (Target) Taylor, Michigan store. On December 8, 2005, Plaintiff and her friend, Donna Elliott, went to Target after work to purchase a toy for Ms. Elliott's grandson. Plaintiff was seventy-one years old.

As they entered the store, both women wiped their feet on the floor mats near the store's entrance. *See* Elliott Dep. at 11. Although it was December, there was no snow on the ground. *See* Walker Dep. at 30. Since they had just left work, Plaintiff suggested that they get something to eat at Target's food court.

At the food court, Plaintiff and Ms. Elliott both ordered a hotdog and a Coke. *See* Pl.'s Dep. at 51. While ordering their food, the women were required to walk over additional floor mats that ran the entire length of the food counter. *See* Racette Dep. at 22. Plaintiff ordered her food first and proceeded to walk to the seating area. *See* Elliott Dep. at 11-12. On her way to the table, Plaintiff did not observe anything on the floor, did not have any trouble walking, and did not slip. *See* Pl.'s Dep. at 54, 97. Ms. Elliott followed Plaintiff and likewise did not observe anything on the floor, did not have any trouble walking, and did not slip. *See* Elliott Dep. at 13. Plaintiff sat down on a bench that was attached to the back wall of Target's food court. *See* Pl.'s Dep. at 56. The women were in the food court for fifteen to twenty minutes, during which time no one approached the area where they were sitting. *See* Pl.'s Dep. at 54-55; Elliott Dep. at 14-16. Further, neither of them spilled anything on the floor, saw anyone else spill liquid on the floor, or became aware of any substance on the floor. *See* Pl.'s Dep. at 54-55; Elliott Dep. at 14-16.

After finishing her hotdog, Plaintiff slid to the right end of the bench in order to stand up. *See* Pl.'s Dep. at 56. With the remainder of her drink in her right hand, Plaintiff planted her left foot on the ground and did not feel anything slippery on the floor. *See id.* at 56-57. Plaintiff then planted her right foot on the ground and began to stand up. *See id.* As she was standing up, Plaintiff's right foot slipped, causing her to fall backward into the wall. *See id.*; Elliott Dep. at 17-19. Plaintiff spilled the remainder of her drink on the floor to her right and under the table to her left. *See* Elliott Dep.

2

at 19-20; Racette Dep. at 42. After hitting the wall, Plaintiff continued to fall to the floor, landing on her right side. *See* Elliott Dep. at 18-19. Upon witnessing the fall, Ms. Elliot immediately stood up and asked Plaintiff what happened. Plaintiff responded that her foot slipped. *See id.* at 23. Neither Plaintiff nor Ms. Elliott discovered what caused Plaintiff to fall. *See id.* at 24; Pl.'s Dep. at 97.

As the accident was taking place, Target's food court manager, Suzanne Racette, was serving customers several tables from Plaintiff. *See* Racette Dep. at 12. Ms. Racette heard Plaintiff's drink hit the floor and turned to see Plaintiff on the ground. *See id.* at 20. She then approached Plaintiff and asked her if she needed assistance. According to Ms. Racette, Plaintiff simply responded that she was embarrassed. *See id.* at 20. Following the accident, Ms. Racette cleaned Plaintiff's spilled drink. *See id.* at 39. It was Target's general practice to sweep the floors of the food court at least once every hour. *See id.* at 22-23. On the day of Plaintiff's accident, Ms. Racette complied with this practice but did not recall the last time she cleaned the floor prior to Plaintiff's fall. *See id.* 34-35. Still, Ms. Racette stated that the floor was dry prior to the accident. *See id.* at 30, 34.

At the time Plaintiff fell, Defendant Walker was helping a customer in a different department and could not see the accident scene. According to Plaintiff, she was on the floor when Defendant Walker arrived. *See* Pl.'s Dep. at 69-70. Plaintiff appeared calm to Defendant Walker and stated that she was embarrassed. *See* Walker Dep. at 34. Defendant Walker stated that she was going to get a wheelchair for Plaintiff and help her off the floor. *See* Pl.'s Dep. at 69-71. Upon hearing this, Ms. Elliott objected to Defendant Walker's plan, stating that she should call an ambulance, and that it was not right to move someone that had just fallen. *See id.*; Elliott Dep. at 26-27, 35. Nevertheless, Defendant Walker again stated that she was going to help Plaintiff into a wheelchair, and then left the scene momentarily to get one. *See* Pl.'s Dep. at 71. Defendant Walker subsequently returned

3

with a wheelchair and, according to Plaintiff, lifted her off the floor with the assistance of another Target employee. *See id.* at 72. Although she heard Defendant Walker's plan to help her, and observed Defendant Walker approaching with a wheelchair, Plaintiff did not voice any objections to being moved. *See id.* at 75-76. According to Plaintiff, Defendant Walker wanted to help her into Ms. Elliott's car and initially did not call an ambulance. *See id.* at 72-73.

Once Plaintiff was in the wheelchair, Defendant Walker began filling out an accident report form. *See* Walker Dep. at 34; Pl.'s Dep. at 80. Plaintiff described the incident and stated that her right leg hurt. *See* Walker Dep. at 28; Pl.'s Ex. 3. Defendant Walker noted that there was liquid on the floor from Plaintiff's drink. *See* Pl.'s Ex. 3. She also inspected the floor mats and found them to be dry. *See* Walker Dep. at 40-41. Finally, Defendant Walker noted that Plaintiff's clothes were dry; however, this observation was made from a distance. *See id.* at 30; Pl.'s Ex. 3. In fact, the rear of Plaintiff's pants was wet. *See* Elliott Dep. at 51. When she was finished filling out the accident report, Defendant Walker called an ambulance for Plaintiff and waited with her and Ms. Elliott near the front of the store for the ambulance to arrive. *See id.* at 41.

As a result of her fall, Plaintiff fractured her right femur and hip, necessitating surgery and extensive rehabilitation. Plaintiff filed the present suit on August 17, 2006, alleging premises liability against Target, and assault, battery, and intentional infliction of emotional distress against Defendant Walker. Defendants now move for summary judgment under Fed. R. Civ. P. 56 as to all of Plaintiff's claims.

### III. LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

4

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005). When deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 249 (citations omitted). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

## IV. ANALYSIS

### A. Plaintiff's Premises Liability Claim

In this case, Target argues that no hazardous condition existed on its premises and, assuming that a hazardous condition did exist, that Plaintiff cannot show Target had actual or constructive notice of the condition. The Court finds that it is not necessary to address the former argument because, assuming a hazardous condition existed, there is no evidence that Target created the condition, or had actual or constructive notice of it.

Under Michigan law, possessors and occupiers of land owe invitees a duty to exercise reasonable care in order to protect the invitees from unreasonable risks created by dangerous conditions on the land. *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516 (2001). In this regard,

> [a] possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of

5

> reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

*Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 610 (1995) (quoting Restatement (Second) of Torts § 343 (1977)). Reasonable care includes warning invitees of any known dangers that the invitee would not otherwise discover and making the premises safe by conducting investigations and remedying hazards. *See Wymer v. Holmes*, 429 Mich. 66, 71 n. 1 (1987).

However, "even though invitors have a duty to exercise reasonable care in protecting their invitees, they are not absolute insurers of the safety of their invitees." *Bertrand*, 449 Mich. at 614. Accordingly, "[t]he mere fact that a customer slips and is injured on the premises of a storekeeper does not constitute actionable negligence." *J.K. Winfrey v. S.S. Kresge Co.*, 6 Mich. App. 504, 507 (1967). To be successful, the plaintiff must show that the danger is attributable to the defendant's negligence through evidence that the defendant created the hazardous condition, or had actual or constructive notice of its existence. *Derbabian v. S & C Snowplowing, Inc.*, 249 Mich. App. 695, 706-707 (2002). Where the defendant did not create the hazardous condition, and did not have actual notice of its existence, the plaintiff may establish constructive notice by presenting evidence that the unsafe condition was of such a character or "ha[d] existed for a length of time sufficient to have enabled a reasonably careful storekeeper to discover it." *Whitmore v. Sears, Roebuck & Co.*, 89 Mich. App. 3, 8 (1979). "A defendant's general knowledge that a condition can materialize is not sufficient to create constructive knowledge of the existence of a particular condition at a specific time." *Herwig-Tucker v. Detroit Entertainment, LLC*, No. 244834, 2004 WL 550736, at *1 (Mich. App. Mar. 18, 2004) (citing *Winfrey*, 6 Mich. App. at 509-10). While the plaintiff may demonstrate the defendant's negligence through circumstantial evidence, such evidence must "take the case out

of the realm of conjecture and within the field of legitimate inferences from established facts ...." *Burghardt v. Detroit United Ry.*, 206 Mich. 545, 545-46 (1919). Summary judgment in favor of the defendant is appropriate "where there is no evidence that the condition existed for a *considerable time*" or "where there is no evidence from which the defendant's negligence can be inferred ...." *Whitmore*, 89 Mich. App. at 7-8 (emphasis added).

In support of its motion, Target presented evidence that the floor in its food court was dry and free from slipping hazards prior to Plaintiff's fall. On that day the weather was clear and there was no snow outside. Additionally, Target's customers were required to walk over thick carpeting designed to siphon water from their shoes upon entering both the store and the food court area; this carpeting was dry on the day of the accident. Both Plaintiff and Ms. Elliott stated that they did not see any substance on the floor prior to sitting down to eat and that they had no trouble walking to their table. Furthermore, according to Target's food court manager, who was responsible for keeping the area clean and had cleaned the area approximately once every hour that day, there was no water or any other slippery substance on the floor. Lastly, neither Plaintiff nor Ms. Elliott ever discovered what Plaintiff slipped on.

In response to Target's evidence, Plaintiff relies on her own testimony that she slipped on something and that her pants were wet after the fall. Plaintiff further contends that the substance that caused her to fall was water because the accident occurred in December, when Target's customers could walk through the store with wet shoes. Finally, Plaintiff points out that the color of the floor (white to off-white) would have made it difficult to see water.

In light of Target's showing, Plaintiff's evidence is insufficient to create a genuine issue of fact for trial. Plaintiff has presented no evidence that Target created the hazardous condition or that

it had actual knowledge of any such condition. Therefore, Plaintiff must show that the unsafe condition was of such a character or "ha[d] existed for a length of time sufficient to have enabled [Target] to discover it." *Whitmore*, 89 Mich. App. at 8. Plaintiff's only evidence bearing on the nature of the condition and the length of time it existed consists of pure conjecture. The record shows that no one observed anything on the floor in the area of Plaintiff's fall prior to the accident. Furthermore, neither Plaintiff nor Ms. Elliott ever discovered what caused Plaintiff to fall.

The only evidence Plaintiff can rely on is the fact that neither she nor Ms. Elliott spilled anything and no other person came into their vicinity during the fifteen to twenty minutes they were there. From this evidence, Plaintiff argues that whatever caused her to fall had to have been there for at least fifteen to twenty minutes. Yet without any evidence illustrating the character of the dangerous condition, there is no basis for concluding that Target should have been aware of it. *See, e.g., Dose v. Equitable Life Assurance Soc.*, 864 F. Supp. 682, 684 (E.D. Mich. 1994) (noting the fact that ice cubes in the puddle of water that caused the plaintiff's fall had not melted indicated that the puddle was recent); *Whitmore*, 89 Mich. App. at 10 (suggesting that testimony that many cars had appeared to drive through a slippery substance could lead to an inference that the substance had been present for a considerable time); *J.C. Penney Co. v. Chavez*, 618 S.W.2d 399 (Tex. Civ. App. 1981) (involving the classic slip and fall on a banana peel: the peel was black, dark, and gooey, indicating that it had been trampled and on the floor long enough to rot).

Moreover, Plaintiff's argument that Target should have been aware of water on its floor is nothing more than speculation that is insufficient to take the case out of the realm of conjecture. The mere fact that the accident occurred at a time of year when Target might have expected water to be brought into the store is insufficient to create constructive notice of the existence of a particular

condition at a specific time. *See Winfrey*, 6 Mich. App. at 509-10 (concluding that the defendant's general awareness that its operation of a popcorn machine could result in kernels on the floor was not evidence that the defendant should have been aware of a particular hazard at a particular time). Further, the fact that the floor mats Target used to siphon water off of customers' shoes were not wet on the day of the fall tends to show that customers were not bringing water into the store on that day. Indeed, assuming that the substance that caused the fall was water, Plaintiff's evidence indicating that water would not have been readily discernable on the white floor weighs against a conclusion that Target should have been aware of its existence. Consequently, the jury would be left to guess as to how long a condition existed and whether it was of such a nature that Target should have been aware of it. As such, Plaintiff cannot establish that Target had notice of any dangerous condition on its premises and, as a result, cannot attribute the existence of any hazardous condition to Target's negligence. Therefore, Target is entitled to summary judgment on this claim.

## B. Plaintiff's Assault and Battery Claims

Plaintiff's assault and battery claims are based on Defendant Walker's conduct when she allegedly lifted Plaintiff from the floor into a wheelchair. Defendants claim that they cannot be liable for assault and battery because Plaintiff impliedly consented to Defendant Walker's actions. "Under tort law principles, a person who consents to another's conduct cannot bring a tort claim for the harm that follows from that conduct." *Smith v. Calvary Christian Church*, 462 Mich. 679, 689 (2000). The reason for this is that the gravamen of an assault and battery claim is not the defendant's hostile intent but the absence of consent to the contact on the plaintiff's part. Thus, the plaintiff's consent "negatives the wrongful element of the defendant's act and prevents the existence of a tort." W. Page Keeton, *et al.*, *Prosser and Keeton on Torts* § 18 at 112 (5th ed. 1984) (Prosser & Keeton);

9

*accord Smith*, 462 Mich. 679 (recognizing that "[n]o wrong is done to one who consents").

Consent may be express or implied. *Young v. Oakland County Gen. Hosp.*, 175 Mich. App. 132, 139 (1989). Implied consent exists where there is "a manifestation of consent, upon which the defendant may reasonably rely." Prosser & Keeton, *supra*, § 18 at 113; *accord Kline by Kline v. Jordan*, 685 S.W.2d 295, 296 (Tenn. App. 1985) ("Consent may appear from the circumstances, so that if there was some manifestation upon which the defendant could reasonably rely, he would not be liable."). Accordingly, "[s]ilence and inaction may manifest consent where a reasonable person would speak if he objected." Prosser & Keeton, *supra*, § 18 at 113.

Defendants claim that Plaintiff consented to Defendant Walker's actions when she did not object to being assisted from the floor into a wheelchair. According to Plaintiff and Ms. Elliott, Defendant Walker stated that she was going to help Plaintiff into a wheelchair. Although, Ms. Elliot voiced her disagreement with this course of action, Plaintiff remained silent on the subject. Plaintiff testified that Defendant Walker then left the area and returned with a wheelchair. Upon returning, Defendant Walker again stated that she was going help Plaintiff off the floor and into the wheelchair. Despite Defendant Walker's statements Plaintiff admits that she did not voice any objections to the offer of assistance. Plaintiff claims that her lack of consent is evidenced by Ms. Elliott's statements to Target's employees that they should not move Plaintiff from the floor.

The Court finds that based on the circumstances in this case, Plaintiff's silence amounted to implied consent. Defendant Walker stated multiple times that she was going to help Plaintiff off of the floor and into the wheelchair. While Plaintiff clearly understood what Defendant Walker planned to do, she did not voice any objections or reservations to being helped from the floor into the wheelchair. Importantly, Plaintiff remained silent even when she saw Defendant Walker return with

the wheelchair. Despite Ms. Elliot's protests, a reasonable person in Plaintiff's position would have voiced some objection or reservation to being lifted from the floor into a wheelchair. Thus, Defendant Walker had no reason to believe that Plaintiff did not consent to her assistance.

Similarly, a reasonable person in Defendant Walker's position would have interpreted Plaintiff's silence as implied consent to the conduct under these circumstances. Defendant Walker, the manager of the store, arrived at the scene and observed a seventy-one year old woman on the floor after a slip and fall accident. According to Defendant Walker, Plaintiff appeared calm and stated that she was embarrassed. Defendant Walker offered to assist Plaintiff off of the floor and into her car. Although Ms. Elliott objected to this idea, Plaintiff did not, and there is no evidence indicating that Plaintiff was incapable of speaking for herself or that Ms. Elliott had any authority to speak for her. Likewise, there is no evidence to suggest that Defendant Walker had reason to know the nature or extent of Plaintiff's injuries at this point. Thus, Defendant Walker had no reason to believe that Plaintiff did not consent to being lifted into a wheelchair. This apparent consent became more clear when Defendant Walker returned to the scene with the wheelchair, at which point Plaintiff should have known that Defendant Walker actually intended to lift Plaintiff from the floor. Therefore, Plaintiff's silence, under these circumstances, was a manifestation of consent upon which Defendant Walker could reasonably rely. As such, Plaintiff cannot bring a claim for assault and battery, and Defendants are entitled to summary judgment on these claims.

## C. Plaintiff's Intentional Infliction of Emotional Distress Claim

Plaintiff's claim for intentional inflection of emotional distress is based on her belief that Defendant Walker, in helping Plaintiff into a wheel chair and waiting to call an ambulance, intended to remove her from Target's premises rather than render proper aid. Defendants argue that Plaintiff

11

has failed to present evidence to support a claim for intentional infliction of emotional distress.

To establish a claim for intentional infliction of emotional distress, a plaintiff must prove (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Graham v. Ford*, 237 Mich. App. 670, 674 (1999). "The threshold for showing extreme and outrageous conduct is high." *Van Vorous v. Burmeister*, 262 Mich. App. 467, 481 (2004). As such, liability is imposed only where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603 (1985).

The Court finds that Plaintiff has failed to show that Defendant Walker's conduct was sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress. Plaintiff's argument in support of this claim is based on her subjective belief that Defendant Walker desired to remove Plaintiff from the premises instead of calling an ambulance. The record, however, does not support Plaintiff's belief. Assuming, as the Court must for purposes of this motion, that Defendant Walker initially declined to call an ambulance, there is no evidence that Defendant Walker knew or should have known the extent of Plaintiff's injuries or that moving Plaintiff would cause severe pain. More importantly, Plaintiff's silence indicated that she consented to Defendant Walker's course of conduct. Therefore, the Court finds that Defendant Walker's conduct was not so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *But cf. Haverbush v. Powelson*, 217 Mich. App. 228, 234 (1996) (finding extreme and outrageous conduct where, over a two year period, the defendant "(1) sent a barrage of letters to [the plaintiff],

to his daughter, and to his future in-laws, in which she called him a compulsive liar, threatened his fiancee with physical harm, and threatened to tell his colleagues that he had harassed [the defendant]; (2) left lingerie on [the plaintiff's] vehicle and at his residence several times; (3) left an ax and a hatchet on his vehicles, after having asked him how his fiancee would like to have an ax through her windshield; (4) told a co-worker several times that someone should 'ice' [the plaintiff]; and (5) wrote several letters threatening to move in with him even though he was engaged and would soon be married."); *Doe v. Mills*, 212 Mich. App. 73, 92-93 (1995) (finding extreme and outrageous conduct where the defendants identified the plaintiffs by name and publicized the fact of their abortions on large signs for public viewing). As a result, Defendants are entitled to summary judgment on this claim.

## V. CONCLUSION

The Court concludes that there is no genuine factual issues on any of Plaintiff's claims. Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED and that Plaintiff's cause of action is HEREBY DISMISSED.

IT IS SO ORDERED.

Dated: December 13, 2007

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE